# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 01/24/2020 04:30 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk
Case 2:20-cv-02567-MWF-GJS   Document 1-2   Filed 03/18/20   Page 2 of 34   Page ID #:9
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Richard Rico

KEMNITZER, BARRON & KRIEG, LLP
ADAM J. MCNEILE          Bar No. 280296
KRISTIN KEMNITZER      Bar No. 278946
42 Miller Ave., Third Floor
Mill Valley, CA  94941
Telephone:  (415) 632-1900
Facsimile:  (415) 632-1901
kristin@kbklegal.com
adam@kbklegal.com

Attorneys for Plaintiff ALICIA K. MICHALAK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ALICIA K. MICHALAK, individually and on behalf of the general public, | **Case No.** |
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, RESTITUTION, AND DAMAGES FOR:** |
| vs. | |
| EXETER FINANCE LLC and DOES 1 through 50, inclusive, | **I.   VIOLATIONS OF THE REES-LEVERING AUTOMOBILE SALES FINANCE ACT, CIVIL CODE §2981, *ET SEQ.*;** |
| Defendants. | **II.  VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CIVIL CODE §1788, *ET SEQ.*;** |
| | **III. VIOLATIONS OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CIVIL CODE §1785.1, *ET SEQ.*; AND** |
| | **IV.  VIOLATION OF THE UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE §17200, *ET SEQ.*** |
| | Unlimited Civil Case |
| | <u>JURY TRIAL DEMANDED</u> |

## PRELIMINARY STATEMENT

1.      Plaintiff ALICIA K. MICHALAK ("Plaintiff"), on behalf of herself and the

general public, and in the public interest, brings this action against Defendants EXETER

FINANCE LLC ("EXETER") and DOES 1 through 50 to address the unlawful, unfair, and deceptive practices of EXETER following the repossession of Plaintiff's motor vehicle.

2.      The Rees-Levering Automobile Sales Finance Act, Civil Code §2981, *et seq.* (the "Rees-Levering Act") sets forth the bright-line rule that if a statutory post-repossession notice (commonly referred to as an "NOI") does not strictly comply with the law, no deficiency balance may be collected. Because EXETER's NOI does not comply with the law, EXETER's attempts to collect on the alleged deficiency balance from Plaintiff was illegal.

3.      EXETER's statutory post-repossession notice is a form document. EXETER continues to send the same deficient NOI to members of the general public. EXETER is not entitled to a deficiency balance from members of the public to whom it issues such notice or has issued such notice in the past, and Plaintiff is seeking to enjoin EXETER from continuing to issue the defective notice or attempt to collect on deficiencies following issuing such notice pursuant to the Unfair Competition Law, Business & Professions Code §17200, *et seq.* (the "UCL"), as set forth in the prayer for relief. A public injunction is appropriate in this case, as EXETER has been and continues to issue defective NOI containing the same form violations to California consumers.

4.      EXETER's attempts to collect from Plaintiff also constitute violations of the Rosenthal Fair Debt Collection Practices Act, Civil Code §1788 *et seq.* (the "Rosenthal Act"), and EXETER has violated the California Consumer Credit Reporting Agencies Act, Civil Code §1785.1 *et seq.* (the "CCCRAA") by continuing to report the non-existent deficiency balance on Plaintiff's credit.

5.      Plaintiff seeks appropriate relief, including declaratory relief, injunctive relief, damages, and attorneys' fees, costs, and expenses.

## **PARTIES**

6.      Plaintiff ALICIA K. MICHALAK is an individual over the age of 18 years. At all times relevant herein, Plaintiff was, and currently is, a resident of the State of California, County of Los Angeles.

7.      Defendant EXETER is a Delaware limited liability company which, at all times

1   relevant herein, was licensed to do business and was conducting business in the State of

2   California and the County of Los Angeles. EXETER is engaged in the business of providing

3   financing to purchasers of automobiles, and in debt collection on such accounts.

4   ## DOE DEFENDANTS

5       8.    DOES 1 through 50 are persons or entities whose true names and capacities are

6   presently unknown to Plaintiffs and who therefore are sued by such fictitious names. Plaintiffs

7   are informed, believe and thereon allege that each of the fictitiously named Defendants

8   perpetrated some or all of the wrongful acts alleged herein-below, are responsible in some

9   manner for the matters alleged herein, and are jointly and severally liable to Plaintiffs. Plaintiffs

10   will seek leave of court to amend this Complaint to state the true names and capacities of such

11   fictitiously named Defendants when ascertained.

12   ## AGENCY

13       9.    Plaintiff is informed, believes and thereon alleges that at all times mentioned

14   herein each Defendant, whether actually or fictitiously named, was the principal, agent (actual or

15   ostensible), or employee of each other Defendant. In acting as such principal or within the course

16   and scope of such employment or agency, each Defendant took some part in the acts and

17   omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff and to the

18   members of the public for the relief prayed for herein.

19   ## JURISDICTION AND VENUE

20       10.    This Court has jurisdiction over Plaintiff's claims because Plaintiff is a resident of

21   California, and EXETER is qualified to do business in California and regularly conducts

22   business in California.

23       11.    Venue is proper in the County of Los Angeles because Plaintiff resides in the

24   County of Los Angeles.

25   ## OPERATIVE FACTS

26       12.    Plaintiff purchased a used 2013 Kia Optima Hybrid on February 16, 2017. The

27   dealership arranged financing for the purchase, and assigned the conditional sale contract to

28   EXETER (a "RISC"). A copy of the RISC is attached hereto as **Exhibit A**.

13.     EXETER repossessed Plaintiff's vehicle on November 4, 2019. EXETER mailed Plaintiff a written document dated November 5, 2019, titled "Notice of Our Plan to Sell Property," stating that the vehicle had been repossessed and would be sold unless she redeemed the vehicle by paying the full balance remaining on the loan, or reinstated the contract. This document, commonly referred to as an "NOI" is attached hereto as **Exhibit B**. However, the NOI did not contain several of the disclosures mandated by Civil Code §§2983.2(a)(1)-(a)(9).

14.     Plaintiff was unable to recover her vehicle. EXETER then sold the vehicle and assessed a deficiency balance of $12,902.64 against Plaintiff and demanded that she pay this amount to EXETER. A copy of this "Explanation of Calculation of Surplus or Deficiency" dated December 26, 2019 is attached hereto as **Exhibit C**. EXETER falsely represented to Plaintiff that she owed a deficiency balance when in fact she did not because of EXETER's noncompliance with the Rees-Levering Act.

15.     Plaintiff has suffered injury in fact and has lost money or property as a result of the unlawful, unfair, and fraudulent acts and practices of EXETER challenged herein.

16.     Specifically, as a result of EXETER's defective NOI, Plaintiff was not provided the information to which she was entitled in order to recover possession of her vehicle and ultimately lost possession of the vehicle and the equity she had put into it. Further, EXETER has damaged Plaintiff's credit by reporting a deficiency balance to the credit reporting agencies that Plaintiff does not owe. Plaintiff has had to take time out of her day and use her cell phone, for which she is charged a monthly fee, to contact EXETER and various third parties to determine what she would have needed to do to get the vehicle back, because the NOI was defective.

**The Rees-Levering Act**

17.     A consumer's right to a particularized notice after repossession is established by the provisions of the Rees-Levering Act. The Rees-Levering Act regulates the repossession and disposition of motor vehicles financed under conditional sale contracts in California, and, among other provisions, imposes strict requirements upon holders of conditional sale contracts, such as EXETER, following the repossession of a vehicle.

18.     In order to protect consumers' valuable property interests in financed vehicles,

1  and afford buyers a full opportunity to make an informed decision as to whether to exercise their
2  statutory right to redemption or reinstatement, the Rees-Levering Act requires the seller or holder
3  of the contract to issue a detailed NOI to the buyer following repossession. Civil Code §2983.2
4  specifies the precise information and disclosures that must be included in the NOI in order to
5  comply with the law.

6      19.    Absent strict compliance with the mandatory requirements for the NOI, a seller or
7  holder may not lawfully collect any deficiency from any person liable under a RISC following
8  disposition of the repossessed vehicle. The Rees-Levering Act specifically provides that those
9  persons "shall be liable for any deficiency only if the notice prescribed" only if the notice
10  contains "all" of the disclosures mandated by the statute. Civil Code §2982.2(a) (emphasis
11  added).

12      20.    The Rees-Levering Act further specifies that no seller or holder may obtain a
13  deficiency judgment, and "no deficiency judgment shall lie in any event," against a person
14  otherwise liable under a RISC after the repossession and disposition of a vehicle unless a court
15  has determined, upon the affidavit of the seller or holder, or a hearing if the court so requires,
16  that the sale or other disposition was in conformity with the provisions of the Rees-Levering Act.
17  Civil Code §2983.8.

18      21.    The NOI that EXETER issued Plaintiff following the repossession of his vehicle
19  was materially defective and incomplete, and failed to inform Plaintiffs of all of their legal rights
20  and obligations.

21      22.    Specifically, the NOI sent by EXETER fails to comply with the strict
22  requirements of the Rees-Levering Act for the reasons set forth below.

23  **a.  Violation of Civil Code §2983.2(a)(1), Regarding the Consumer's Right to Redeem the**
24  **Vehicle**

25      Consumers owe deficiency balances only if the NOI "full the indebtedness evidenced by
26  the contract until the expiration of 15 days from the date of giving or mailing the notice and
27  provides an itemization of the contract balance and of any delinquency, collection or
28  repossession costs and fees and sets forth the computation or estimate of the amount of any credit

1    for unearned finance charges or canceled insurance as of the date of the notice." Civil Code
2    §2983.2(a)(1).

3            EXETER's NOI fails to comply with the requirements of this section because the NOI
4    fails to set forth an estimate for canceled GAP insurance. Plaintiff had purchased GAP insurance
5    in the amount of $640.00. EXETER was required to estimate the estimated amount of canceled
6    GAP insurance and subtracted that from the amount Plaintiff would have needed to pay to
7    redeem the vehicle.

8       **b. Violation of Civil Code §2983.2(a)(2), Regarding the Consumer's Right to Reinstate**
9       **the Contract.**

10           Consumers owe deficiency balances only if the NOI "[s]tates either that there is a
11   conditional right to reinstate the contract until the expiration of 15 days from the date of giving
12   or mailing the notice and all the conditions precedent thereto or that there is no right of
13   reinstatement and provides a statement or reasons therefore." Civil Code §2983.2(a)(2). "[I]n
14   requiring creditors to state 'all the conditions precedent' to reinstatement, the Legislature
15   intended that creditors provide sufficient information to defaulting buyers to enable them to
16   determine precisely what they must do in order to reinstate their contracts." *Juarez v. Arcadia*
17   *Fin., Ltd.* (2007) 152 Cal.App.4th 889, 899.  Specifically, the consumer must be able to reinstate
18   the contract "*without need for further inquiry*" on the part of the borrower and cannot require the
19   consumer to make any calls. *Id.* at 904-06 (emphasis supplied) (If a consumer must call to
20   reinstate, then "an unscrupulous creditor could take advantage of this situation by simply evading
21   a buyer's requests for the necessary information.").

22           EXETER's NOI fails to comply with the requirements of this section because it fails to
23   state all of the "conditions precedent" to reinstatement and requires "further inquiry," as follows:

24           i.      The NOI states "WE ARE UNAWARE OF ANY AMOUNTS THAT MAY
25                   BECOME DUE TO THIRD PARTIES AFTER THE DATE OF THE NOTICE."
26                   This requires the consumer to make further inquiry to all third parties listed on the
27                   NOI to determine what, if any, amounts will come due to those third parties after
28                   the date of the notice.

ii.     The NOI states "The collateral may be transported to auction, and you will be required to pay any additional but yet to be determined costs[,]" which requires the consumer to make further inquiry to determine what "auction" costs the consumer may have to pay.

iii.     The NOI states, "If you exercise your right to redeem the Collateral or . . . reinstate the Contract, the Collateral will be returned to you either at the repossession agency or resale facility, depending on the date of redemption or reinstatement." The NOI further states, "For information regarding the location of the Collateral, please call us at (800) 321-9637." This requires the consumer to make further inquiry to EXETER to determine where the vehicle would be on any specific date.

**c.   Violations of Civil Code §2983.2(a)(1), (a)(2), (a)(5), Government Code §26751, and Vehicle Code §28 Pertaining to the Government Fee Required for Redemption or Reinstatement**

Government Code §26751 and Vehicle Code §28 require the consumer to pay a state required fee of $15 to the law enforcement agency where the reported repossession was filed before the vehicle can be released.  Government Code §26751 mandates that "any person in possession of the vehicle shall not release it to the debtor without first obtaining proof of payment of the fee to the sheriff."  Thus, not only must the consumer pay the $15 law enforcement fee, but upon retrieving the vehicle, the consumer must provide proof of payment of the fee to the storage facility.  Otherwise the consumer cannot retrieve the vehicle.  Thus, providing proof of payment of the fee is a necessary "condition precedent" to both reinstatement and redemption.

The EXETER NOI fails to inform the consumer that proof payment of the fee must be made to the person in possession of the vehicle. Proof of payment of the fee *to the required party* is a necessary "condition precedent" to both reinstatement and redemption and per *Juarez v. Arcadia Fin., Ltd.* (2007) 152 Cal.App.4th 889, its omission is a further violation of Civil Code §§2983.2(a)(1) and 2983.2(a)(2).

23.     The NOI also violates other provisions of Civil Code §2983.2(a) not detailed herein.

24.     The defective and improper NOI issued to Plaintiff, which EXETER continues to issue to members of the public purportedly pursuant to Civil Code §2983.2, deprives them of the statutorily-mandated notice, and are standard notices sent by EXETER as a practice and procedure.

25.     Notwithstanding EXETER's failure to comply with the mandatory NOI requirements of the Rees-Levering Act, EXETER has assessed, demanded, attempted to collect, and collected deficiency balances from borrowers, including Plaintiff, for which Plaintiff is not liable as a matter of law and which EXETER has no legal right to demand or to collect.

26.     EXETER has made unlawful collection demands to Plaintiff and has falsely represented to Plaintiff that a deficiency balance is owed

27.     At all relevant times, EXETER has had actual and/or constructive knowledge that Plaintiff is not liable for any deficiency balance as a matter of law as a result of its failure to comply with the Rees-Levering Act, but has nevertheless persisted in its unlawful collection activity.

28.     EXETER and/or its agents regularly report or communicate to consumer credit reporting organizations that purported deficiencies following disposition of vehicles pursuant to the unlawful practices described herein are valid debts when, in fact, Plaintiff is not liable for a deficiency as a matter of law.

**FIRST CAUSE OF ACTION**
**(Violations of the Rees-Levering Automobiles Sales Finance Act, Civil Code §2981, *et seq.*)**
**(By Plaintiff Against EXETER and Applicable DOES)**

29.     Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above.

30.     The Rees-Levering Act regulates automobile sale and financing transactions for motor vehicles purchased primarily for personal or family purposes. The conditional sale contract entered into by Plaintiffs are subject to and governed by the provisions of the Rees-Levering Act. EXETER is or was a "seller" or "holder" of said contracts as those terms are used

1   in the statute.

2        31.    EXETER has engaged and is engaged in ongoing material violations of the Rees-

3   Levering Act in that the NOI provided to Plaintiff and which continues to be provided to the

4   public, ostensibly pursuant to Civil Code §2983.2(a), does not contain the statutorily-mandated

5   disclosures and information required by Civil Code §2983.2(a). Thus EXETER deprived

6   Plaintiff and continues to deprive the public of substantial rights granted them under the Rees-

7   Levering Act, including the right to make an informed decision about whether to

8   redeem/reinstate their contracts. Because EXETER has failed to provide Plaintiff and the public

9   with all of the information and disclosures to which they were entitled under Civil Code

10   §2983.2(a), Plaintiff and the public are not liable, under the explicit terms of §§2983.2(a) and

11   2983.8 of the Rees-Levering Act, for any deficiency following the disposition of their

12   repossessed motor vehicles. Nevertheless, without any legal right to do so, EXETER maintains

13   that Plaintiffs and the public owe it for deficiency balances and has collected or attempted to

14   collect such deficiency balances.

15        32.    As a direct and proximate result of the acts hereinabove alleged and EXETER's

16   ongoing unlawful conduct, Plaintiff has been damaged in an amount to be proven at trial.

17        33.    Plaintiff seeks recovery of their attorneys' fees, costs and expenses incurred in the

18   filing and prosecution of this action.

19        WHEREFORE, Plaintiff prays for relief as set forth below.

20                     **SECOND CAUSE OF ACTION**
**(Violations of the Rosenthal Fair Debt Collection Practices Act, Civil Code §1788, *et seq.*)**
21                     **(By Plaintiff Against EXETER and Applicable DOES)**

22        34.    Plaintiff realleges and incorporates herein by reference the allegations of each and

23   every paragraph above.

24        35.    The Rosenthal Act was enacted in 1976 to ensure the integrity of our banking and

25   credit industry. Civil Code §1788.1(b). The California Legislature found that "unfair or

26   deceptive debt collection practices undermine the public confidence which is essential to the

27   continued functioning of the banking and credit system and sound extensions of credit to

28   consumers." Civil Code §1788.1(a)(2).

36.     EXETER at all times relevant herein was a "debt collector" within the meaning of Civil Code §1788.2(c). EXETER, regularly and in the ordinary course of business, on behalf of itself or others, engages in acts and practices in connection with the collection of consumer debt. EXETER had a non-delegable duty under the Rosenthal Act not to commit violations of the Act, and not to allow its agents to commit such violations, which duties EXETER itself was prohibited from violating.

37.     The purported deficiency balance which EXETER attempted to collect from Plaintiffs was a "consumer debt" within the meaning of Civil Code §1788.2(f). Plaintiff is a "debtor" within the meaning of Civil Code §1788.2(h) in that they are natural persons from whom EXETER sought to collect a consumer debt alleged to be due and owing.

38.     EXETER attempted to collect non-existent deficiency balances from Plaintiff by, among other things, conducting collections efforts in-house, reporting the deficiency balance to the credit reporting agencies as valid, and by making demands for payment, including by sending a deficiency notice.

39.     EXETER made false representations to Plaintiff that she owed a debt, and the amount and legal status of the alleged debt, by sending Plaintiff a standardized form demand letter, in which EXETER stated that Plaintiff "must pay" her alleged deficiency balance, when she was under no obligation to pay. This was a violation of Civil Code §1788.17 (through violation of 15 U.S.C. §1692e, including §1692e(2)).

40.     EXETER attempted to collect on a debt that is not permitted by law by attempting to collect on a legally non-existent post-repossession deficiency balance. EXETER's conduct violated 15 U.S.C. §1692f, including §1692f(1), incorporated into the Rosenthal Act by Civil Code §1788.17.

41.     As a proximate result of EXETER's violations of the Rosenthal Act, Plaintiff has been damaged in an amount that is subject to proof.

42.     Plaintiff is entitled to recover their actual damages pursuant to Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(1), or in the alternative, Civil Code §1788.30(a).

43. EXETER's violations of the Rosenthal Act were willful and knowing, thereby entitling Plaintiffs to recover statutory damages pursuant to Civil Code §1788.17, which incorporates by reference the remedies of 15 U.S.C. §1692k(a)(2)(A), or in the alternative, Civil Code §1788.30(b).

44. Plaintiff is entitled to attorneys' fees and costs pursuant to Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(3), or in the alternative, Civil Code §1788.30(c).

WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION
**(Violation of the California Consumer Credit Reporting Agencies Act, Civil Code §1785.1 *et seq.*)**
**(By Plaintiff Against EXETER and Applicable Does)**

45. Plaintiff realleges and incorporates by reference the allegations set forth above.

46. EXETER violated Civil Code §1785.25(a) by furnishing information on a specific transaction or experience to a consumer credit reporting agency when EXETER knew or should know have known the information was incomplete or inaccurate.

47. EXETER knew from the time EXETER sent the NOI that Plaintiff would not owe any deficiency balance on their account, due to EXETER's violations of the Rees-Levering Act. However, as to Plaintiff, EXETER reported a deficiency balance on their credit.

48. Plaintiff has suffered actual damages as a result of EXETER's unlawful acts, including but not limited to credit damage, court costs, and pain and suffering.

49. EXETER's violations of the Consumer Credit Reporting Agencies Act were negligent, entitling Plaintiffs to recover actual damages pursuant to Civil Code §1785.31.

50. EXETER's violations of the Consumer Credit Reporting Agencies Act were willful, entitling Plaintiff to recover punitive damages of up to $5,000 for each violation, and any other relief the court deems proper, pursuant to Civil Code §1785.31(a)(1)(B). Plaintiff alleges that each month of unlawful credit reporting consists of a separate and actionable violation under Civil Code §1785.31(a)(1)(B).

51. Plaintiff has been aggrieved by EXETER's violations described herein, and seeks injunctive relief to put an end to said violations pursuant to Civil Code §1785.31(b).

52. Plaintiff is entitled to an award of attorneys' fees and costs pursuant to Civil Code

11

1   §1785.31(d).

2        WHEREFORE, Plaintiff prays for relief as set forth below.

3                    **FOURTH CAUSE OF ACTION**
                (**Violations of Business & Professions Code §17200,** *et seq.*)
4        (**By Plaintiff and on Behalf of the Public against EXETER and Applicable Does**)

5        53.    Plaintiff realleges and incorporates herein by reference the allegations in each and

6   every paragraph above.

7        54.    Plaintiff files this cause of action individually, and on behalf of the general public,

8   to challenge and to remedy Defendants' business practices. Business & Professions Code

9   §17200, *et seq.*, often referred to as the "Unfair Competition Law," defines unfair competition to

10  include any unlawful, unfair, or fraudulent business act or practice. The UCL provides that a

11  court may order injunctive relief and restitution to affected individuals as remedies for any

12  violations of the UCL.

13       55.    Beginning on an exact date unknown to Plaintiff, EXETER has committed acts of

14  unfair competition proscribed by the UCL, including the practices alleged herein. The acts of

15  unfair competition include the following:

16       (a)    EXETER violated and continues to violate the provisions of Civil Code

17       §2983.2(a) with respect to Plaintiff and the public by failing to send them NOI that

18       contain the disclosures mandated by that section;

19       (b)    EXETER breached and continues to breach the terms of its uniform conditional

20       sales contracts with Plaintiff and the public by breaking its twin promises in the RISCs to

21       (1) "provide you all notices required by law to tell you when and how much to pay and/or

22       what action you must take to redeem the vehicle," and (2) "If you break your promises

23       (default), we may demand that you pay all you owe on this contract at once, subject to

24       any right the law gives you to reinstate this contract."

25       (c)    EXETER negligently misrepresented and continues to misrepresent to Plaintiff

26       and members of the public issued defective NOI that they are obligated to pay deficiency

27       balances;

28       (d)    EXETER actively concealed and continues to conceal its unlawful activity from

                                          12

Plaintiff and members of the public sent defective NOI;

(e)     EXETER unlawfully, unfairly, and/or fraudulently carried and continues to carry on its accounts records deficiency balances of Plaintiff and members of the public issued NOI as amounts lawfully due and owing;

(f)     EXETER unlawfully, unfairly, and/or fraudulently reported and continues to report to credit reporting agencies the deficiency balances allegedly owed by Plaintiff and members of the public issued defective NOI as amounts lawfully due and owing;

(g)     EXETER unlawfully, unfairly, and/or fraudulently reported and continues to report to third parties deficiency balances allegedly owed by Plaintiff and members of the public issued defective NOI as amounts lawfully due and owing; and

(h)     EXETER unlawfully, unfairly, and/or fraudulently collected and continues to collect or attempt to collect deficiency balances from Plaintiff and members of the public sent defective NOI.

(i)     EXETER unlawfully, unfairly, and/or fraudulently continues to send defective NOI to members of the public.

56.     The business acts and practices of EXETER as hereinabove alleged constitute unlawful business practices in that, for the reasons set forth above, said acts and practices violate the provisions of the Rees-Levering Act, constitute systematic breaches of contracts and constitute violations of the common law.

57.     The business acts and practices of EXETER, as hereinabove alleged, constitute unfair business practices in that said acts and practices offend public policy and are substantially injurious to consumers. Said acts and practices have no utility that outweighs the substantial harm to consumers.

58.     The business acts and practices of EXETER, as hereinabove alleged, constitute fraudulent business practices in that said acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations, and by use of such deception, may preclude consumers from exercising legal rights to which they are entitled.

59.     The unlawful, unfair, and fraudulent business acts and practices of EXETER

described herein presents a continuing threat to Plaintiff and the public in that EXETER is currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

60.     As a direct and proximate result of the acts and practices described herein, EXETER has received and collected substantial monies or property to which EXETER is not entitled. Plaintiff has suffered injury in fact and has lost money or property as a result of the unlawful, unfair and fraudulent acts and practices of EXETER challenged herein.

61.     Pursuant to Business and Professions Code § 17203, Plaintiff seeks an injunction that EXETER do the following:

(a)     EXETER shall cease issuing NOI in that contain any of the violations set forth in Paragraph 22 of this Complaint;

(b)     EXETER shall not accept any payments from any person who received an NOI in the form similar to **Exhibit B** and shall change all account balances to zero;

(c)     EXETER shall take all steps necessary to cease all efforts to collect the alleged deficiency balances of members of the public who received an NOI in the form of **Exhibit B**. This includes, but is not limited to recalling all accounts from outside agencies, recalling all such accounts that have been assigned to legal counsel, and dismissing all pending legal actions to collect a deficiency balance on any such account; and

(d)     EXETER shall instruct TransUnion, Equifax, and Experian to delete all trade lines with respect to accounts of those members of the public who received an NOI in the form of **Exhibit B**.

62.     In addition, pursuant to Code of Civil Procedure § 1021.5, Plaintiff seeks recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action.

63.     WHEREFORE, Plaintiffs pray for relief as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

(1)   For an order finding and declaring that EXETER's acts and practices as challenged herein are unlawful and unfair;

(2)   For an order of restitution in an amount to be determined at trial to restore to Plaintiff all money acquired by EXETER by means of their unlawful and unfair practices, which

1    amount is at least equal to all sums collected for alleged deficiency balances following

2    the disposition of repossessed motor vehicles;

3    (3)    For entry of an injunction that EXETER do the following:

4        (a)    EXETER shall cease issuing NOI in that contain any of the violations set
5            forth in Paragraph 22 of this Complaint;

6        (b)    EXETER shall not accept any payments from any person who received an
        NOI in the form similar to **Exhibit B** and shall change all account
7            balances to zero;

8        (c)    EXETER shall take all steps necessary to cease all efforts to collect the
        alleged deficiency balances of members of the public who received an
9            NOI in the form of **Exhibit B**. This includes, but is not limited to recalling
        all accounts from outside agencies, recalling all such accounts that have
10           been assigned to legal counsel, and dismissing all pending legal actions to
        collect a deficiency balance on any such account; and

11       (d)    EXETER shall instruct TransUnion, Equifax, and Experian to delete all
        trade lines with respect to accounts of those members of the public who
12           received an NOI in the form of **Exhibit B**.

13   (4)    For such compensatory damages in an amount to be determined at trial, which amount is

14   at least equal to all sums paid by Plaintiff for alleged deficiency balances following the

15   disposition of repossessed motor vehicles;

16   (5)    For statutory damages;

17   (6)    For prejudgment interest to the extent permitted by law;

18   (7)    For an award of attorneys' fees, costs, and expenses pursuant to Civil Code §1780(e),

19   Civil Code §2983.4, Code of Civil Procedure §1021.5, and any other applicable

20   provisions of law;

21   (8)    For declaratory relief; and

22   (9)    For such other and further relief as the Court may deem just and proper.

23   Dated:  January 24, 2020                    KEMNITZER, BARRON, & KRIEG, LLP

24

25                                              By: _____

26                                                  ADAM MCNEILE

27

28

1

## **JURY TRIAL DEMANDED**

2          Plaintiffs demands a trial by jury on all issues so triable.

3  Dated: January 24, 2020                 KEMNITZER, BARRON, & KRIEG, LLP

4

5                                   By:  _____

6                                        ADAM MCNEILE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

DM'S Tracking #: 4303227   Report # 0   Printed 02/16/2017 04:49 pm  1 of 1

# CALIFORNIA
# RETAIL INSTALLMENT CONTRACT

Contract Number __603629907__

Date of Contract __Feb 16, 2017__

Seller (Creditor)  CarMax Auto Superstores California, LLC, 6100 AUTO CENTER DRIVE, BUENA PARK, CA 90621

**Meaning Of Some Words:** In this Contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

| | Name | Address | | Zip Code |
|---|---|---|---|---|
| Buyer | ALICIA KATE MICHALAK , | | | |
| | Name | Address | | Zip Code |
| Co-Buyer | | | | |
| | Name | Address | | Zip Code |

K M X 4303227

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 2,000.00 |
|---|---|---|---|---|
| 21.12 % | $ 15,874.42 e* | $ 20,164.46 e* | $ 36,038.88 | $ 38,038.88 e* |

*e means an estimate

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $ 500.54 | Monthly, beginning  Apr 02, 2017 |
| N/A | N/A | N/A |

See the back of this Contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

**Security:** You are giving a security interest in the motor vehicle being purchased.

**Late Charge:** If a payment is late more than 10 days, you will be charged 5% of the unpaid amount of the installment.

**Prepayment:** If you pay off the full amount owed under this Contract early, you will not have to pay a penalty.

---

Description of Vehicle You Are Purchasing:

Use of Property: ☑ Personal ☐ Commercial ☐ Agricultural

☐ New ☐ Used

| Year | Make | Model | Vehicle Identification Number |
|---|---|---|---|
| 2013 | KIA | OPTIMA HYBRID | KNAGM4ADXD5064732 |

Description of Vehicle You Sold to Creditor as a "Trade-in":  N/A

| Year | Make | Model | Vehicle Identification Number |
|---|---|---|---|
| | | N/A | |
| Year | Make | Model | Vehicle Identification Number |
| | | N/A | |

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item A.12. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term _____ (in months)

I want the optional GAP contract.
Buyer Signs: _____

**YOUR PROMISE TO PAY**
You agree to pay us the Amount Financed and Finance Charge provided for in this Contract according to the Payment Schedule above. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown above are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

**SECURITY AGREEMENT:** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you give us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**STATEMENT OF INSURANCE**
**PROPERTY INSURANCE: YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE COLLATERAL, ENDORSED TO PROTECT CREDITOR AS LOSS-PAYEE, BUT YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT AND INSURANCE COMPANY YOU CHOOSE.**

**NOTICE.** No person is required as a condition precedent to financing the purchase of an automobile that any insurance be negotiated or purchased through a particular insurance agent or broker.  Exeter Finance Corp

TITLE HOLDER OF COLLATERAL
ALICIA KATE MICHALAK
REGISTRANT

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| **A. CASH PRICE** | | |
| 1. Cash Price of Vehicle | $ | 17,998.00 |
| 2. Cash Price of Accessories Not Itemized Separately | $ | 0.00 |
| | | 50.00 |
| 3. CarMax Document Processing Charge (Not a Government Fee) | $ | 50.00 |
| 4. Pollution Control Certification Fee Paid To Seller | $ | 0.00 |
| 5. Theft Deterrent Device | $ | 0.00 |
| 6. Theft Deterrent Device | $ | 0.00 |
| 7. Surface Protection Product | $ | 0.00 |
| 8. Sales Tax | $ | 1,586.21 |
| 9. Electronic Vehicle Registration or Transfer Charge (Not a Government Fee) To _____ | $ | 23.00 |
| 10. Optional Extended Service Contract To MaxCare Warranty Services of North Ameri | $ | 1,639.00 |
| 11. To _____  For Prior Credit Or Lease Balance (See Downpayment and Trade-In Calculation) | $ | 0.00 |
| 12. Optional GAP Waiver Agreement | $ | 640.00 |
| 13. Vehicle Contract Cancellation Option Agreement | $ | No Charge |
| 14. Total Cash Sale Price (Sum of A(1) through A(13)) | $ | 22,016.21 |
| **B. AMOUNTS PAID TO PUBLIC OFFICIALS** | | |
| 1. Vehicle License Fees | $ | 0.00 |
| 2. County | $ | 11.00 |
| 3. Registration, Transfer and Titling Fees | $ | 129.00 |
| 4. California Tire Fees* | $ | 0.00 |
| 5. Other Official Fees: | $ | 0.00 |
| 6. Total Amount Paid To Public Officials [Sum of B(1) through B(5)] | $ | 140.00 |
| **C. POLLUTION CONTROL CERTIFICATE OR EXEMPTION FEE PAID TO STATE** | $ | 8.25 |
| **D. SUBTOTAL [A(14) + B(6) + C]** | $ | 22,164.46 |
| **E. DOWN PAYMENT** | | |
| 1. "Trade-in" | | |

TITLE HOLDER

REGISTRANT ALICIA KATE MICHALAK

PHYSICAL DAMAGE DEDUCTIBLES: Comprehensive $ 500.00   Collision $ 500.00

INSURANCE COMPANY PROGRESSIVE

POLICY NUMBER: 57144172

EFFECTIVE DATE: 01/16/2017   EXPIRATION DATE: N/A

AGENT NAME: CUSTOMER SERVICE   TELEPHONE NUMBER: (800) 776-4737

AGENT ADDRESS: N/A

You warrant and affirm that you have or will obtain the required insurance coverage as shown above and understand and agree that is required by the Insurance Requirements section on the reverse side of this Contract.

**YOU AGREE THAT YOU VOLUNTARILY SELECTED THE ABOVE INSURANCE AGENT, BROKER OR COMPANY AND THAT SUCH CHOICE WAS NOT MADE A CONDITION PRECEDENT TO THE EXTENSION OF CREDIT UNDER THIS CONTRACT.**

BUYER:

CO-BUYER:

SELLER:

**UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.**

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

s/s

If you have a complaint concerning this sale, you should try to resolve it with the Seller. Complaints concerning unfair or deceptive practices or methods by the Seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the Seller may not change the financing or payment terms unless you agree in writing to the change.
You do not have to agree to any change, and it is an unfair or deceptive practice for the Seller to make a unilateral change.

Buyer's Signature          Co-Buyer's Signature

**NOTICE TO BUYER:**
(1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

**YOU ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT AND ANY OTHER DOCUMENTS THAT YOU SIGNED DURING CONTRACT NEGOTIATIONS AT THE TIME OF SIGNING.**

| | | |
|---|---|---|
| D. SUBTOTAL [A(14) + B(6) + C] | $ | |
| E. DOWN PAYMENT | | |
| 1. "Trade-In" | | |
| a. Agreed Value of "Trade-In" | $ | 0.00 |
| b. Proceeds from "Trade-In" Retained by Buyer | $ | 0.00 |
| c. Prior Credit or Lease Balance | $ | 0.00 |
| 2. Net Value of "Trade-In" [1(a) - 1(b) - 1(c)] (If 1(c) exceeds 1(a) a negative number will appear.) | $ | 0.00 |
| 3. Manufacturer's Rebate | $ | 0.00 |
| 4. Cash Down Payment | $ | 2,000.00 |
| 5. Other: N/A | $ | 0.00 |
| 6. Total Down Payment (If the total down payment is a negative number, a zero will appear and the amount still owed will appear in A(11).) | $ | 2,000.00 |
| F. AMOUNT FINANCED [D - E(6)] | $ | 20,164.46 |

* Seller may retain a portion of amount.

**Seller Assisted Loan**
If the Seller assisted you in obtaining a loan to pay for part of the downpayment or purchase price of the vehicle, you will be obligated to repay the loan, and the installment payments under this Contract.

Amount of Loan $ N/A   Finance Charge $ N/A

Total $ N/A   repayable in N/A installments of

$ N/A . You may be required to pledge security for the loan.

**Waiver of Confidentiality**
By signing below, you agree to waive your right under California Vehicle Code § 1808.21 to keep confidential your resident address as maintained in the records of the California Department of Motor Vehicles. This waiver will apply only to a financial institution licensed by the state or federal government to do business in California that acquires an interest in this Contract.

Buyer's Signature          Co-Buyer's Signature

**BROKER FEE DISCLOSURE**
If this Contract is for the sale of a new Vehicle, then this Contract:
☐ is not subject to an autobroker fee.
☐ is subject to a fee received by the following autobroker:

THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT
**Agreement to Arbitrate**
By initialing below you represent that you have read and agree to the Arbitration Provisions on the back.

Buyer's Initials          Co-Buyer's Initials

**THERE IS NO COOLING OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**

California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind; decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud.

However, California law does require a seller to offer a 2-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

Buyer   CarMax Auto Superstores California, LLC   Date 02/16/17

Seller   (Firm Name)

Co-Buyer   Date 02/16/17

By   Date

Exeter Finance Corp

**ASSIGNMENT**
Seller hereby sells, assigns and transfers to _____ ("Assignee") this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all of the terms and conditions of that Dealer Agreement.

(Seller/Assignor)   Title   Date 02/16/17

12/14   www.carmax.com   RIC0005

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Late Charge.** If you fail to pay any installment for more than 10 days after the date it is due, you will pay a late charge of 5% of the unpaid amount of the installment.

**NSF Fees.** If a check, draft, or order presented to us for payment is returned unpaid you will be charged the maximum NSF fee allowable under applicable law, not to exceed $15.

**Care, Use, and Location of the vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada so long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insur-ance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that ~~y~~ou incur. We will charge you for any insurance we purchase. The insurance we buy may ~~co~~st more than the insurance you could buy on your own. The charge for the insurance will ~~b~~e the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract or the vehicle is repossessed, you agree that Creditor, to the extent permitted by applicable law, may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges. Any benefits and/or refunds received shall be applied toward your obligations under this Contract in accordance with applicable law. If you cancel an optional contract, you authorize Creditor to receive any refunds due you, which shall be applied by Creditor towards your obligations under this Contract in accordance with applicable law.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you. If you default we may require that you pay all you owe on this Contract at once subject to any right you may have to reinstate this Contract. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**"Trade-in" and Down Payment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Collection Costs.** Following any notice required by law, you agree to pay our reasonable attorney fees and court costs, if we refer this Contract for collection or enforcement to an attorney who is not our salaried employee.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Applicable Law.** This Contract shall be governed by federal law and California law, except as otherwise provided in this Contract. If any provision is found to be ineffective under any applicable law or regulation, the remainder of this Contract shall not be affected and shall continue to be binding and effective.

**Application of Payments and Partial Prepayments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Entire Agreement.** This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including emails addresses or cellular telephone numbers for which you may incur voice, data or other charges.

The following notice applies only to purchases primarily for personal, family, or household purposes.

## NOTICE:

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The CarMax Warranty Brochure contains the details of the Limited Warranty.

LIMITATION OF WARRANTIES: CARMAX MAKES NO EXPRESS WARRANTIES UNLESS SEPARATELY SET FORTH IN WRITING. ANY AND ALL IMPLIED WARRANTIES APPLICABLE TO THE PRODUCTS SOLD HEREUNDER, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO THE DURATION OF THE WRITTEN LIMITED WARRANTY GIVEN BY CARMAX, IF ANY.

To the extent allowed by applicable law, CarMax shall not be liabl~~e~~ for any damages relating to loss of use of the products, loss ~~of~~ time, inconvenience or commercial loss, or any other incidental ~~or~~ consequential damages. Any and all warranties are extended only ~~to~~ the original purchaser.

SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG ~~AN~~ IMPLIED WARRANTY LASTS OR EXCLUSION OR LIMITATIONS ~~OF~~ RELIEF SUCH AS INCIDENTAL OR CONSEQUENTIAL DAMAGES ~~SO~~ THE ABOVE LIMITATION MAY NOT APPLY TO YOU. THIS WARR~~ANTY~~ GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU ALSO MAY ~~HAVE~~ OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

VEHICLE RETURN POLICY. You may return the vehicle to ~~us~~ for a refund within 5 calendar days if the condition of the ~~vehicle~~ does not change. This policy only applies to used v~~ehicles~~

under this Contract. Our expenses may include, for example, the cost to retake the Vehicle, hold and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**"Trade-in" and Down Payment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-in." You represent that any "Trade-in" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

consequential damages... the original purchaser.

SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR EXCLUSION OR LIMITATIONS ON RELIEF SUCH AS INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU ALSO MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

VEHICLE RETURN POLICY. You may return the vehicle to CarMax for a refund within 5 calendar days if the condition of the vehicle does not change. This policy only applies to used vehicles.

## ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.

**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

The following Buyers Guide notice applies in the case of a used motor vehicle purchase only and is required by federal regulation:

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT FOR SALE. SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.**

**EXHIBIT B**



P.O. Box 166008
Irving, TX  75016

Customer Service (800) 321-9637
Fax (214) 572-8199

ALICIA K MICHALAK

| Date of Notice 11/5/2019 | | Date of Retail Installment Sale Contract – "Agreement" 2/16/2017 |
|---|---|---|
| "Vehicle" | | |
| Year 2013 | Make KIA | Model OPTIMA HYBRI |
| Vehicle Identification Number KNAGM4ADXD5054732 | | Account No. ███8054 |

7019 1120 0000 4232 8688

## NOTICE OF OUR PLAN TO SELL PROPERTY

Dear ALICIA K MICHALAK;

We have your 2013 KIA OPTIMA HYBRI, with VIN number KNAGM4ADXD5054732 because you broke promises in our agreement.

We will sell your 2013 KIA OPTIMA HYBRI at private sale sometime after 11/25/2019.  A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe.  If we get less money than you owe, you will still owe us the difference.  If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses.  To learn the exact amount you must pay, call us at (800) 321-9637.

If you want us to explain to you in writing how we have figured the amount you owe us, you may call us at (800) 321-9637 or write to us at the address shown at the top of this Notice and request a written explanation.

If you need more information about the sale call us at (800) 321-9637 or write to us at the address shown at the top of this Notice.

We are sending this notice to the following other people who have an interest in 2013 KIA OPTIMA HYBRI or who owe money under your agreement:

N/A

Sincerely,
Exeter Finance LLC

☒ If this box is checked, the Additional Disclosures on the following pages apply.

CA NOI – REVISED 10.10.16



P.O. Box 166008
Irving, TX 75016

Customer Service (800) 321-9637
Fax (214) 572-8199

# ADDITIONAL DISCLOSURES

## A.  BANKRUPTCY

### 1.  Recognition of Rights:

☐ If this box is checked, Exeter Finance LLC. ("Exeter") is aware that you are currently a debtor under Title 11 of the U.S. Code.  Exeter has obtained an order granting it relief from the automatic stay under 11 U.S.C. § 362 (the "Order").  Pursuant to the Order, Exeter is entitled to (i) dispose of the Collateral in accordance with applicable non-bankruptcy laws and (ii) seek the collection of any deficiency you may owe to Exeter to the extent permitted by applicable bankruptcy law.

Please be advised that, as more fully described on our Notice of Our Plan to Sell Property and these Additional Disclosures, Exeter may have a claim against you or your bankruptcy estate if the total amount obtained by Exeter upon the disposition of the Collateral is less than the Contract Balance stated in these Additional Disclosures, and any other amounts due to Exeter under applicable non-bankruptcy law (collectively, the "Deficiency").  Collectively, the Notice of Our Plan to Sell Property and the Additional Disclosures are referred to herein as the "Notice."

THE NOTICE IS NOT A DEMAND BY EXETER TO COLLECT ANY DEFICIENCY FROM YOU OR YOUR BANKRUPTCY ESTATE AT THIS TIME, BUT IS INSTEAD PROVIDED TO NOTIFY YOU THAT EXETER IS RESERVING ALL OF ITS RIGHTS AND REMEDIES TO COLLECT THE DEFICIENCY IN ACCORDANCE WITH APPLICABLE BANKRUPTCY AND NON-BANKRUPTCY LAWS.  NOTHING IN THE NOTICE IS INTENDED TO VIOLATE OR EXCEED THE RELIEF GRANTED TO EXETER IN THE ORDER.

### 2.  Additional Rights in Bankruptcy:

IN ADDITION TO THE RIGHTS SET FORTH IN THESE ADDITIONAL DISCLOSURES, YOU MAY HAVE A RIGHT TO REDEEM THE COLLATERAL UNDER 11 U.S.C. § 722 UNTIL THE COLLATERAL IS SOLD AS SET FORTH IN THE NOTICE OF OUR PLAN TO SELL PROPERTY.  PLEASE CONSULT YOUR BANKRUPTCY ATTORNEY OR THE BANKRUPTCY COURT PRESIDING OVER YOUR CASE.

## B.  REES-LEVERING AUTOMOBILE SALES FINANCE ACT

☒ If this box is checked, the Contract is governed by the Rees-Levering Automobile Sales Finance Act and the following terms apply.

**Intent to Dispose**

Exeter intends to dispose of the Collateral upon the expiration of 15 days from the date of giving or mailing the Notice, or if by mail and either the place of deposit in the mail or the place of address is outside of California, the period shall be 20 days instead of 15 days.

**Redemption**

You have the right to redeem the Collateral, in other words the right to regain possession of the Collateral, by paying in full the indebtedness owed to Exeter under the Contract at any time before 15 days from the date of giving or mailing the Notice (as calculated pursuant to California Civil Code sections 9 and 10), subject to your right to extend that period for 10 days as explained on page 6 of the Additional Disclosures.

 **Exeter**

P.O. Box 166008
Irving, TX 75016

Customer Service (800) 321-9637
Fax (214) 572-8199

To exercise your right to redeem, you must pay all Redemption Amounts itemized in these Additional Disclosures before 11/25/2019(the "Initial Redemption Period") or, if you properly request an extension, before 12/5/2019.

**Reinstatement**

☒ If this box is checked, then you have a conditional right to reinstate the Contract until the expiration of 15 days from the date of giving or mailing the Notice (as calculated pursuant to California Civil Code sections 9 and 10), subject to your right to extend this period for 10 days as explained below.

The conditional right to reinstate the Contract means that you may regain possession of the Collateral if you pay the full Reinstatement Amounts shown in these Additional Disclosures before 11/25/2019(the "Initial Reinstatement Period") or if you properly request an extension before 12/5/2019.

To take possession of the Collateral, be prepared to:
- ☐ Provide proof of insurance
- ☐ Provide proof of current vehicle registration
- ☒ Present proof of identification
- ☐ Present a valid driver license

☐ If this box is checked, then you have no conditional right of reinstatement because:

☐ The buyer or any other person liable on the contract has already exercised the right to reinstate the contract within the previous 12 months, or twice during the term of the Contract.

☐ The buyer or any other person liable on the contract by omission or commission intentionally provided false or misleading information of material importance on his or her credit application.

☐ The buyer, any other person liable on the contract, or any permissive user in possession of the Collateral, in order to avoid repossession has concealed the Collateral or removed it from the state.

☐ The buyer or any other person liable on the contract has committed, attempted to commit, or threatened to commit criminal acts of violence or bodily harm against an agent, employee, or officer of the seller or holder in connection with the seller's or holder's repossession of or attempt to repossess the Collateral.

☐ The buyer, any other person liable on the contract, or any permissive user in possession of the Collateral, has committed or threatened to commit acts of destruction, or has failed to take care of the Collateral in a reasonable manner, so that the Collateral has become substantially impaired in value, or the buyer, any other person liable on the contract, or any non-occasional permissive user in possession of the Collateral has failed to take care of the Collateral in a reasonable manner, so that the Collateral may become substantially impaired in value.

☐ The buyer has knowingly used the Collateral, or has knowingly permitted it to be used, in connection with the commission of a criminal offense, other than an infraction, as a consequence of which the Collateral has been seized by a federal, state, or local agency or authority pursuant to federal, state, or local law.



P.O. Box 166008
Irving, TX 75016

Customer Service (800) 321-9637
Fax (214) 572-8199

☐ The Collateral has been seized by a federal, state, or local public agency or authority pursuant to (A) Section 1324 of Title 8 of the United States Code or Part 274 of Title 8 of the Code of Federal Regulations, (B) Section 881 of Title 21 of the United States Code or Part 9 of Title 28 of the Code of Federal Regulations, or (C) other federal, state, or local law, including regulations, and, pursuant to that other law, the seizing authority, as a precondition to the return of the Collateral to the seller or holder, prohibits the return of the Collateral to the buyer or other person liable on the contract or any third person claiming the Collateral by or through them or otherwise effects or requires the termination of the property rights in the Collateral of the buyer or other person liable on the contract or claimants by or through them.

**Itemization of Redemption Amounts and Reinstatement Amounts (if applicable)**

The following is an itemization of the amounts you must pay in order to regain possession of the Collateral by exercising your right to redeem the Collateral or, if applicable, your conditional right to reinstate the Contract.

AMOUNTS CURRENTLY DUE TO EXETER:

|  |  |  | Redemption | Reinstatement |
|---|---|---|---|---|
| Contract Balance: |  |  | $ 18990.56 |  |
| Principal: | $ | 17586.35 |  |  |
| Interest: | $ | 1404.21 |  |  |
| Accrued late charge(s): |  |  | $ 537.07 | $ 537.07 |
| Installment payments due: |  |  |  |  |
| Date: | 12/2/2018 |  | $ | $ 500.54 |
| Date: | 1/2/2019 |  | $ | $ 500 54 |
| Date: | 2/2/2019 |  | $ | $ 500.54 |
| Date: | 3/2/2019 |  | $ | $ 500.54 |
| Date: | 4/2/2019 |  | $ | $ 500.54 |
| Date: | 5/2/2019 |  | $ | $ 500 54 |
| Date: | 6/2/2019 |  | $ | $ 500.54 |
| Date: | 7/2/2019 |  | $ | $ 500.54 |
| Date: | 8/2/2019 |  | $ | $ 500 54 |
| Date: | 9/2/2019 |  | $ | $ 500.54 |
| Date: | 10/2/2019 |  | $ | $ 500.54 |
| Date: | 11/2/2019 |  | $ | $ 500.54 |
| Resale Facility -related fee(s): |  |  | $ 0.00 | $ 0.00 |
| Repossession-related fee(s): |  |  | $ 850.00 | $ 850.00 |
| Returned check fee(s): |  |  | $ 0.00 | $ 0.00 |
| Previously Deferred fee(s) |  |  | $ 0.00 | $ 0.00 |

MINUS estimated unearned finance charges or canceled insurance as of the date of the Notice

| **Total Amount Currently Due to Exeter** |  |  | $ 20377.63 | $ 7393.55 |

 **Exeter**

P.O. Box 166008
Irving, TX 75016

Customer Service (800) 321-9637
Fax (214) 572-8199

Deliver payment to 222 W. Las Colinas Blvd., Suite 1800, Irving, TX 75039 or mail to PO Box 166008, Irving, TX 75016.

AMOUNTS CURRENTLY DUE TO THIRD PARTIES:

|  | Redemption | Reinstatement | |
|---|---|---|---|
| Law Enforcement Agency Release fee: | $    15.00 | $ | 15.00 |
| Pay to:    Los Angeles Police Dept 100 W First St Los Angeles CA 90012 | | | |
| Accrued Storage fee(s): Pay to: | $ | $ | |
| Redemption fee(s): Pay to: | $ | $ | |
| Registration fee(s): Pay to: | $ | $ | |
| Other: Pay to: | $ | $ | |
| **Total Amount Currently Due to <u>Third Parties</u>** | $    15.00 | $ | 15.00 |
| <u>**TOTAL AMOUNT CURRENTLY DUE TO REDEEM OR TO REINSTATE**</u> | $    20392.63 | $ | 7408.55 |

AMOUNTS THAT WILL COME DUE TO EXETER AFTER 11/5/2019, THE DATE OF THIS NOTICE*:

| | | |
|---|---|---|
| Interest at the rate of $0.00 per day, beginning on the day after the date of the Notice and continuing until payment in full is made* | $    0.00 | $    0.00 |
| Installment that becomes due on 12/2/2019 | $    500.54 | $    500.54 |
| Installment that becomes due on 1/2/2020 | $    500.54 | $    500.54 |

 Exeter

P.O. Box 166008
Irving, TX 75016

Customer Service (800) 321-9637
Fax (214) 572-8199

| | | | | |
|---|---|---|---|---|
| Late charge that becomes due on 11/12/2019 | $ | 25.02 | $ | 25.02 |
| Late charge that becomes due on 12/12/2019 | $ | 25.02 | $ | 25.02 |
| Transport Fee(s) (The Collateral may be transported after the date of the Notice, and you will be required to pay any additional but yet to be determined costs) | $ | 0.00 | $ | 0.00 |
| Resale Facility Fee(s) (The Collateral may be transported to auction, and you will be required to pay any additional but yet to be determined costs) | $ | 0.00 | $ | 0.00 |
| Storage Fee(s) (There may be a Storage Fee at the rate of $25.00 per day, beginning on the day after the Notice Date and continuing until the Collateral is transported to auction, and you will be required to pay any additional but yet to be determined costs.) | $ | 0.00 | $ | 0.00 |
| Reconditioning & Repair Fee(s) (The Collateral may be reconditioned or repaired, and you will be required to pay any additional but yet to be determined costs) | $ | 0.00 | $ | 0.00 |

Deliver payment to 222 W. Las Colinas Blvd., Suite 1800, Irving, TX 75039 or mail to PO Box 166008, Irving, TX 75016.

*If you reinstate the Contract prior to an installment payment becoming due, the interest that accrues from the date of this Notice will be included in the installment payment that will become due.

WE ARE UNAWARE OF ANY AMOUNTS THAT MAY BECOME DUE TO THIRD PARTIES AFTER THE DATE OF THE NOTICE.

**Extension**
Upon written request, Exeter will without further notice extend for an additional 10 days the redemption period or, if you are entitled to the conditional right of reinstatement, both the redemption and reinstatement periods. The proper form for applying for the extension is the last page of these Additional Disclosures. The extension form must be personally served or sent by certified or registered mail, return receipt requested, to the office designated on the form. In addition, Exeter must receive the request before the expiration of the Initial Redemption Period and Initial Reinstatement Period.

**Collateral Return**
If you exercise your right to redeem the Collateral or, if applicable, your conditional right to reinstate the Contract, the Collateral will be returned to you either at the repossession agency or resale facility, depending on the date of redemption or reinstatement.

Repossession Agency Name and Address:
Sterling Asset Recovery Inc
11142 Peoria St
Sun Valley CA 91352

Resale Facility Name and Address:
Adesa San Diego
2175 Cactus Road
San Diego, CA 92154

For information regarding the location of the Collateral, please call us at (800) 321-9637.



**Exeter**

P.O. Box 166008
Irving, TX 75016

Customer Service (800) 321-9637
Fax (214) 572-8199

**Accounting**

Upon written request, Exeter will furnish a written accounting regarding the disposition of the Collateral. The request for accounting must be personally served or sent first-class mail, postage prepaid, or certified mail, return receipt requested, to the following office:

Delivery Name and Address:
Exeter Finance LLC
222 W. Las Colinas Blvd., Suite 1800
Irving, TX 75039

Mailing Name and Address:
Exeter Finance LLC
PO Box 166008
Irving, TX 75016

**Deficiency**
**NOTICE. YOU MAY BE SUBJECT TO SUIT AND LIABILITY IF THE AMOUNT OBTAINED UPON DISPOSITION OF THE VEHICLE IS INSUFFICIENT TO PAY THE CONTRACT BALANCE AND ANY OTHER AMOUNTS DUE.** The "vehicle" referred to in the previous sentence is the Collateral described on page 1 of the Notice of Our Plan to Sell Property. Subject to Additional Disclosure A, if applicable, upon the disposition of the Collateral, you will be liable for the Deficiency plus interest at the contract rate, or at the legal rate of interest pursuant to California Civil Code section 3289 if there is no contract rate of interest, from the date of disposition of the Collateral to the date of entry of judgment.



P.O Box 166008
Irving, TX 75016

Customer Service (800) 321-9637
Fax (214) 572-8199

## REQUEST FOR EXTENSION

_____ ALICIA K MICHALAK _____, Account Number __▓▓3054_____, hereby requests that
                        [Name of Requesting Party]
Exeter Finance LLC. extend for an additional 10 days the redemption period or, if entitled to the
conditional right of reinstatement, both the redemption and reinstatement periods.

Date: _____        Borrower's Signature: _____

**NOTICE**: Your request for an extension must be personally served or sent by certified or registered mail
return receipt requested, to the following address(s) and must be received by Exeter before the expiration
of the initial redemption and, if applicable, reinstatement periods:

Delivery Name and Address:          Mailing Name and Address:
Exeter Finance LLC                  Exeter Finance LLC
222 W. Las Colinas Blvd., Suite 1800   PO Box 166008
Irving, TX 75039                    Irving, TX 75016

CA NOI – REVISED 10.10.16
Page 8 of 8

**EXHIBIT C**

 **Exeter**

P.O. Box 166008
Irving, TX 75016
800-321-9637

December 26, 2019

ALICIA K MICHALAK

<span style="background:black">███████████████</span>

### Explanation of Calculation of Surplus or Deficiency

ACCOUNT NUMBER:  ████8054

#### Description of Collateral:

| Year: 2013 | Model: OPTIMA HYBRI | Make: KIA |
|---|---|---|
| VIN: KNAGM4ADXD5054732 | | Contract Date: 02/16/2017 |

Dear ALICIA K MICHALAK:

This is formal notice that the above-referenced collateral was sold on 12/19/2019. The proceeds of the sale have been applied as detailed below as of 12/23/2019. If the application of the proceeds of the sale resulted in a surplus, we will return that amount to you unless we have to pay someone else with an interest in the collateral. If the application of the proceeds of the sale resulted in a deficiency, you remain liable to us for this deficiency and must pay this amount in full upon receipt of this notice.

| | |
|---|---|
| Contract Balance as of 12/19/2019: | $18,990.57 |
| Plus Late Fees: | $537.07 |
| Subtotal: | $19,527.64 |
| Proceeds of Sale: | $6,900.00 |
| Outstanding Balance Following Sale: | $12,627.64 |
| Plus Other Charges: | |
| Repossession Fees: | $0.00 |
| Storage Fees: | $0.00 |
| Sale Fees: | $200.00 |
| Legal Fees: | $0.00 |
| Other Fees: | $75.00 |
| Subtotal: | $275.00 |
| Less credit for unearned finance charge as of 12/23/2019: | ($0.00) |
| Less credit for cancelled insurance premiums as of 12/23/2019: | ($0.00) |
| Less other credit: | ($0.00) |
| Deficiency Balance as of 12/23/2019: | $12,902.64 |

(The checked box applies to you.)

☒ Deficiency balance for which you are liable and for which demand is hereby made: $12,902.64
☐ No deficiency balance is owed because the debt was discharged in bankruptcy.

Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency.

 **SEE IMPORTANT CONSUMER NOTICES AT END OF LETTER**

Please write us at P.O. Box 166008, Irving, TX 75016 or call us at 800-321-9637, Mon - Thu 7am - 9pm, Fri 7am - 5pm, or Sat 8am - 5pm (Central Time) if you have any questions regarding this notice.

Sincerely,

Exeter Finance LLC
P.O. Box 166008
Irving, TX 75016
800-321-9637

## IMPORTANT CONSUMER NOTICES:

If you are entitled to the protections of the United States Bankruptcy Code regarding the subject matter of this letter, this communication is not an attempt to collect a debt from you personally in violation of the bankruptcy code but is for informational purposes only.

Exeter Finance LLC can report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

Attention Servicemembers and Dependents: The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including prohibiting repossession under most circumstances during the servicemember's active duty service. Exeter Finance LLC will not repossess the property of a service member or his or her dependent during that time, unless pursuant either to a court order or a servicemember's written waiver. You can contact us toll-free at 800-321-9637 if you have questions about your rights under SCRA.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.



2349870846